Peauson, J.
 

 As the intestate was sheriff and also one of the defendants in the execution, he had no power to act in his official capacity. The question can, therefore, be presented in a plainer view by relieving it from both of those circumstances, and treating it, as if the testator had
 
 *326
 
 handed the execution to a third person, who was neither sheriff nor one of the defendants, with the instructions above stated: the money is accordingly received and is paid to Fleming; and the question is, is this payment to Fleming an answer to the action ?
 

 Fleming was the legal owner of the bond, after the sale and delivery to the testator. He was, also, the legal owner of the judgment, had control of it, and might have released it at any time, while the “ chose in action” was in existence.
 

 The legal effect of the contract of sale and delivery of the bond, was to constitute the testator an agent of Fleming, to receive the money. But the money vested in the testator, as legal owner, the moment it was received; for the
 
 chose in action,
 
 of which Fleming was the legal
 
 owner,
 
 was extinguished by an act which he had authorised to be done — viz: the reception of the moneyand the money vested in the testator, as legal owner, by force of the contract of sale, which thereby became executed, in the same way, as if Fleming had himself received the money, and handed it to the testator in execution of the contract.
 

 If, therefore, the testator had called on Brigman, and received the money, it would have been his; and Fleming would have had no right to it, or cause of action for it.
 

 The circumstance, that the testator, instead of going himself, sent the defendant’s intestate, for the money, can make no difference. The instant he received U, it became the money of the testator, and the payment to Fleming
 
 “ was in his own ivrong.”
 
 lie must look to his bond of indemnity.
 

 Pea Cum am. Judgment reversed, and judgment for the plaintiffs, according to the verdict.